UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TAYLOR and PATRICK TAYLOR,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORP., a Delaware Corporation, et al.,<br><br>Defendants. | No. 2:25-cv-2687-TLN-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

On September 30, 2025, Plaintiffs filed a motion for a preliminary injunction. ECF No. 6. Plaintiffs are proceeding pro se in this matter, and their motion is accordingly referred to the undersigned for findings and recommendations pursuant to Local Rule 302(c)(21). Plaintiffs seek to enjoin Defendants from taking any collection action based on the loans at issue in this action, and from communicating with any credit reporting agencies about these debts. ECF No. 6 at 1-2, 4. Plaintiffs also moved for sanctions against Defendants for, *inter alia*, continuing collection efforts even after commencement of this action. *Id.* at 3. The court heard the motions on November 13, 2025. For the reasons provided below, the undersigned recommends that both motions be denied.

1

**BACKGROUND**

I.  **Factual Allegations and Evidence**

The Complaint alleges that 20 years ago, Plaintiff David Taylor was "fraudulently induced" into securing loans to attend ITT Technical Institute ("ITT"). ECF No. 1 at 2. This included both loans from the U.S. Department of Education ("DOE") and private loans that have since been assigned to Defendants Higher Education Loan Authority of the State of Missouri ("MOHELA"), Navient Solutions, LLC, and Navient Corp. (collectively "Navient"). *Id.* Plaintiff Patrick Taylor, David's father, co-signed one of these loans. *Id.*

In the summer of 2019, following the collapse of the for-profit Corinthian Colleges, Inc., a class action was brought to compel the adjudication of borrower defense claims submitted to the DOE. *See Sweet v. Cardona*, 641 F. Supp. 3d 814, 820 (N.D. Cal. 2022). The certified class included any former student of a listed for-profit college, including ITT, who received a federal student loan and had asserted a borrower defense that the DOE had not adjudicated on the merits. *Id.* In 2022, the parties in *Sweet* reached a settlement agreement which provided full, automatic relief to most applicants and hard deadlines for deciding whether to grant relief to the others, with certain presumptions in favor of those applicants during the adjudication. *Id.* at 821-22.

Plaintiffs' reply brief in support of his motion includes an October 20, 2022 email from the DOE confirming that David Taylor's federal student loans were fully discharged without further action. ECF No. 30 at 23. The email advised him that this did not automatically discharge any private loans, like the loans Defendants service. *Id.* He nevertheless submitted this email to MOHELA as part of an application seeking discharge of his private loans.

The reply brief also includes evidence that on April 11, 2025, MOHELA informed David Taylor that Navient had denied his discharge application. ECF No. 30 at 53-54. MOHELA's letter explained that Navient had considered a variety of factors when deciding that he did not meet the requirements to have his private loans discharged based on ITT's misconduct. *Id.* David Taylor appealed the denial on May 8, 2025, requesting in part that MOHELA articulate what specific requirements were considered and why Defendants had concluded he did not meet them based on the evidence submitted. *Id.* at 51-52. MOHELA's June 12, 2025 response

2

| | |
|---|---|
| 1 | reaffirmed that the settlement in *Sweet* did not entitle him to discharge of private loans, while |
| 2 | asserting that Navient's Legal Department had made all decisions concerning his discharge |
| 3 | application. *Id.* at 49.  Plaintiff filed a complaint against Navient Corp. with the Consumer |
| 4 | Financial Protection Bureau later that day. *Id.* at 46.  On June 13, 2025, Navient responded that it |
| 5 | had transferred all servicing of the loans to MOHELA, to whom David Taylor should therefore |
| 6 | direct all complaints. *Id.* at 45. |
| 7 | On July 19, 2025, MOHELA sent David Taylor a letter identifying five reasons for |
| 8 | Navient's denial of the discharge application. *Id.* at 39-42.  This included insufficient evidence of |
| 9 | alleged misconduct, of alleged harm, and of causation connecting said misconduct to said harm; |
| 10 | the length of time since the misconduct occurred; and the length of time since Plaintiffs became |
| 11 | aware of such misconduct. *Id.* |
| 12 | The Complaint alleges that enforcement of these loans for twenty years has resulted in |
| 13 | significant lost income, bankruptcy in 2018, and housing instability for David Taylor and his |
| 14 | daughter. ECF No. 1 at 3.  It has also damaged Patrick Taylor's financial security and credit. *Id.* |
| 15 | The Complaint further argues that Defendants dealt with Plaintiffs in bad faith by continuing |
| 16 | collection actions while David Taylor appealed the discharge application denial. *Id.*  Plaintiffs |
| 17 | also allege that each Defendant blames the other for such denial as if they are separate entities, |
| 18 | even though all three use a single address and two lack the required debt collection license from |
| 19 | the California Department of Financial Protection and Innovation ("DFPI"). *Id.* at 3-4. |
| 20 | Based on these allegations, the Complaint first alleges "Conspiracy to Defraud & Fraud in |
| 21 | the Inducement" for knowingly and willfully servicing loans predicated upon ITT's fraud, and |
| 22 | retaining the $24,841.52 Plaintiffs have paid thus far. *Id.* at 4.  It then alleges violations of the |
| 23 | Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, both for attempting to |
| 24 | collect on a debt that Defendants should have known was fraudulent and for "harassing" Plaintiffs |
| 25 | with 400 emails in the process. *Id.*  The Complaint further alleges that these collection efforts |
| 26 | also constitute Intentional Infliction of Emotional Distress and effectively breach the federal court |
| 27 | order approving the settlement agreement in *Sweet*. *Id.* at 5-6.  Separately, the Complaint alleges |
| 28 | violations of the Consumer Financial Protection Act based on Defendants blaming each other for |

the denial of the discharge application; the California Debt Collection Licensing Act ("CDCLA") based on the lack of DFPI licensing; and 26 U.S.C. § 7206 based on a Form 1099-E Navient filed with the Internal Revenue Service ("IRS") that uses Navient Solutions' name but Navient Corp.'s Taxpayer Identification Number ("TIN"). *Id.* at 5.

Based on these causes of action, the Complaint seeks disgorgement of $199,999,998 in "unjustly enriched funds," punitive and exemplary damages of $1,799,999,982, unspecified consequential damages for the harm inflicted on Plaintiffs, declaratory relief rescinding all subject loans as unenforceable, and injunctive relief both discharging these loans and compelling their deletion from Plaintiffs' credit reports. *Id.* at 6.

## II.     Course of Proceedings

Plaintiffs filed the Complaint on September 18, 2025 and purportedly served all Defendants with the Complaint and Summons on September 19, 2025. ECF Nos. 1, 5. On September 30, 2025, Plaintiffs received a voicemail from Viviana Hedrick, counsel for MOHELA, requesting a return call to discuss the case. ECF No. 8 at 1, 4. Plaintiffs ignored the voice message, purportedly because they refuse to engage in any unrecorded communication in this matter. *Id.* at 1. On October 1, Navient sent Plaintiffs a Notice of Rejected Service of Process for failure to serve its registered agent for process. ECF No. 30 at 131.

Hedrick called three more times before David Taylor responded via email on October 2, 2025. ECF No. 8 at 2, 5-6. This email offered to settle the case for $500 million, and alternatively gave Defendants only one opportunity to counteroffer in writing within 48 hours for no less than $48 million. *Id.* at 6. Plaintiffs received an automatic email from Hedrick saying she was out of town and had limited access to her email account until October 6. *Id.* at 7. She nevertheless replied on October 3 asking for a phone call to discuss the matter, which Plaintiffs considered "open and willful defiance" of their demand that any settlement discussions be in writing. *Id.* at 2, 7.

On October 7, 2025, MOHELA filed an *ex parte* application requesting an extension of the deadline to respond to the Complaint. ECF No. 12 at 2. The application asserted that MOHELA needed this time in part to "determine if service was proper and/or effective." *Id.* It

4

also explained that Plaintiffs' refusal to discuss the matter via "unrecorded telephone conversation" left MOHELA unable to secure a stipulation for such an extension. *Id.* The Court granted the extension on October 14, 2025, over Plaintiffs' opposition. ECF Nos. 13-14.

## ANALYSIS

### I. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must generally establish all four of the following elements: (1) likely success on the merits of his underlying case; (2) a likelihood that the plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). A plaintiff may also prevail by showing serious questions going to the merits, irreparable harm, and a balance of equities that tips strongly in the plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### II. No Likelihood of Success on the Merits

Plaintiffs' reply brief includes evidence purporting to support most of the causes of action in the Complaint. Some, however, provide no private cause of action. Plaintiffs cite 26 U.S.C. § 7206, for example, when arguing that Defendants have filed fraudulent statements with the IRS by attributing Navient Corp.'s TIN to Navient Solutions on a Form 1099-E. ECF No. 1 at 5. The sole remedy for this, however, is up to a $500,000 fine and a three-year prison sentence following a criminal conviction. *See* 26 U.S.C. § 7206. Similarly, only the Bureau of Consumer Financial Protection ("CFPB") may bring an action against service providers for unfair, deceptive, or abusive acts or practices under 12 U.S.C. § 5536. *See* ECF No. 1 at 5; 12 U.S.C. §§ 5531, 5564.[1]

---

[1] It is not lost on the undersigned that the Trump Administration is reportedly in the process of attempting to shut down the CFPB. *See, e.g.,* Michael Stratford, *Trump administration declares CFPB funding illegal*, Politico.com (Nov. 11, 2025), available at Trump administration declares CFPB funding illegal - POLITICO.

5

As to breach of the CDCLA, meanwhile, Plaintiffs submit screenshots from the websites of the Nationwide Multistate Licensing System ("NMLS"), California Department of Financial Protection and Innovation ("DFPI"), and Florida Office of Financial Regulation ("OFR"). ECF No. 30 at 57-78. These screenshots do show that while MOHELA and Navient are licensed by OFR to operate in Florida (*Id.* at 73-75, 78), NMLS and DFPI searches only yielded results for Navient Solutions, LLC (*Id.* at 57-72). This presupposes, however, that the CDCLA applies to Plaintiff's loans. The CDCLA, Cal. Fin. Code §§ 100000 *et seq*., does not apply to debt collection under the Student Loan Servicing Act ("SLSA"), Cal. Fin. Code §§ 28100 *et seq*. Cal. Fin. Code § 100001(c). The SLSA has its own licensing requirement, but it exempts any bank or loan company doing business under a license "issued by the United States or any state … of the United States that is authorized to transact business in this state." Cal. Fin. Code §§ 28102(a), (b)(1). Plaintiffs do not demonstrate why Defendants cannot operate under their Florida licenses to collect on a student loan. Assuming *arguendo* they cannot, SLSA authorizes only the Commissioner of Financial Protection and Innovation to enjoin unlicensed entities from servicing student loans, not individual borrowers. *See* Cal. Fin. Code §§ 28104(c), 28160.

The Court now turns to the crux of Plaintiffs' preliminary injunction motion. Plaintiffs seek to enjoin collection of the private loans that Defendants own or service, and any communication with credit reporting agencies about these loans. ECF No. 6 at 4. The only claims relevant to such injunctive relief are those that concern whether Defendants should have discharged these loans. Part of the Complaint's allegations that Defendants violated the FDCPA, for example, presupposes that the loans were fraudulent and void when Defendants tried to collect on them, and that they should have known as much.[2] ECF No. 1 at 4. Plaintiffs must demonstrate a probability of success on this issue.

---

[2] Although the Complaint does assert a separate violation of the FDCPA based on "400 separate communications designed to harass" Plaintiffs, the cited section of the FDCPA only limits the number and placement of telephone calls. ECF No. 1 at 4; 15 U.S.C. § 1692d(6). Plaintiffs' evidence—as noted—instead focuses on written communications. In any case, civil remedies for an FDCPA violation are based on actual damages stemming from the misconduct. 15 U.S.C. §

Plaintiffs' discharge application, whether to MOHELA or Navient, relied on the settlement in *Sweet* discharging federal loans because of ITT's fraudulent conduct. *See* ECF No. 30 at 23-29, 47-54. Plaintiffs do not dispute that the settlement in *Sweet* did not in itself discharge private loans like the ones at issue. *Id.* at 2-3, 23, 49. They instead argue that the factual findings underlying the settlement establish that any loan David Taylor accepted to attend ITT was based on fraud, and any such loan agreement is therefore void as a matter of contract law. *Id.* at 2-3. Plaintiffs argue that the "School Misconduct Discharge"[3] process reflects this understanding, and that Defendants' refusal to discharge David Taylor's loans through this process is an act of bad faith. *Id.* at 3.

A claim for fraud or intentional misrepresentation in the state of California requires "(1) a representation, (2) that is false, (3) made with knowledge of its falsity, and (4) with an intent to deceive, coupled with (5) actual detrimental reliance and (6) resulting damage." *Lim v. The.TV. Corp. Internat.*, 99 Cal.App.4th 684, 694 (Cal. Ct. App. 2002). *See also Yagman v. Kelly*, 2018 WL 2138461 at *11 (C.D. Cal. Mar. 20, 2018) (reciting the same elements for fraud under, but with the first two combined into a single "misrepresentation" requirement). Of the six elements, Plaintiffs fail to meet their burden as to the third and fourth. Plaintiffs have not demonstrated, at least at this point, that MOHELA or Navient knew that ITT was engaged in fraudulent conduct when they entered into loan agreements to finance David Taylor's education. Nor can Plaintiffs attribute ITT's fraud to Defendants based on the current evidence.

Plaintiffs may respond that by providing a School Misconduct Discharge program, Defendants waive any requirement that they were a party to the school's misconduct. Plaintiffs still have the burden of demonstrating that Defendants were *legally required* to discharge the loans at issue. Plaintiffs do not meet this burden, and in fact provide evidence that suggests

---

1692k(a). Accordingly, even if this statute applied to emails, it does not appear it would entitle Plaintiffs to debt relief.

[3] MOHELA's July 19, 2025 letter identifies "Navient's School Misconduct Discharge program" as the application process that allows borrowers to apply to have their educational loans with Defendants forgiven, if misconduct by the institution the borrower attended has financially harmed the borrower. *See* ECF No. 30 at 39-42.

another valid reason for denying the application. Among the reasons cited in MOHELA's July 19, 2025 letter is the length of time that had elapsed since Plaintiffs became aware of ITT's misconduct. ECF No. 30 at 39-42. At minimum, they have known about this misconduct since the DOE informed them on October 20, 2022 that all federal loans were consequently discharged. *See id.* at 23-24. Yet the evidence suggests that Plaintiffs did not apply for discharge until 2025, over two years later. *Id.* at 3, 17, 55. Plaintiffs do not explain why Defendants could not consider any discharge application untimely under these circumstances.

The Court also considers whether Plaintiffs have shown a likelihood of success on a theory that the loan agreements were *void ab initio*. Unlike contracts that are voidable due to fraudulent misrepresentation, a contract that violates public policy "is *void ab initio* and will be treated as though no contract ever existed." *Carton v. B & B Equities Group, LLC*, 827 F.Supp.2d 1235, 1244-45 (citing, *e.g., Paul Revere Life Ins. Co. v. Fima,* 105 F.3d 490, 492 (9th Cir.1997)). Whether anyone ever found that the private student loans at issue violate public policy, however, is unclear.

*Sweet* itself said little about any underlying fraud by the educational institutions affected by the settlement, like ITT. It instead concerned allegations that the Secretary of Education had first delayed review of any borrower defense claims for months, then relied on a "presumption of denial" to rapidly send thousands of form-denial notices. 641 F.Supp. 3d at 820-21, 830. The settlement resolved this by providing automatic relief to the majority of class members, expedited processing for a second group with some presumptions favoring the claimants, and a three-year deadline to respond to the rest. *Id.* at 821-22. When analyzing how the settlement agreement affects educational institutions, if at all, the court emphasized that "the settlement does not constitute a successful or approved borrower-defense claim, a position maintained by both the class and Secretary". *Id.* at 828. At no point did the court in *Sweet* itself conclude that any of the educational institutions were engaged in fraud, or that any loans to finance a claimant's attendance violated public policy.

The terms of the settlement also undermine any evidentiary value of the DOE's discharge of David Taylor's federal loan. The January 8, 2025 DOE letter reflected the DOE's decision that

8

| | |
|---|---|
| 1 | ITT "made pervasive and widespread substantial misrepresentations which borrowers relied on to |
| 2 | their detriment and/or violated state consumer protection laws." ECF No. 30 at 27. Yet the |
| 3 | settlement agreement required the DOE to either make this conclusion or to make certain |
| 4 | assumptions that helped it reach this conclusion, depending on which subclass applied to David |
| 5 | Taylor. A private lender that is not required to make such assumptions may reach a different |
| 6 | conclusion. |
| 7 | Plaintiffs may ultimately prevail on their claims that implicate discharge of their private |
| 8 | student debt. But on the current record they have not shown a likelihood of success on the merits |
| 9 | or a substantial question going to the merits. |
| 10 | **III.    No Irreparable Harm** |
| 11 | Plaintiffs also fail to show irreparable harm as understood by the law. Plaintiffs assert that |
| 12 | the loans at issue have damaged their financial standing, deprived David Taylor's daughter of a |
| 13 | stable home, driven David Taylor to bankruptcy, and negatively impacted Patrick Taylor's health. |
| 14 | ECF No. 1 at 3; ECF No. 6 at 3. The purported ongoing harm is "the continuation of this |
| 15 | nightmare." ECF No. 30 at 9. As MOHELA notes, however, Plaintiffs cite no authority to |
| 16 | suggest that any of this constitutes irreparable harm meriting a preliminary injunction. ECF No. |
| 17 | 22 at 5. |
| 18 | If "adequate compensatory or other corrective relief will be available at a later date, in the |
| 19 | ordinary course of litigation," courts generally hesitate to find irreparable harm. *Drakes Bay* |
| 20 | *Oyster Co. v. Salazar*, 921 F.Supp.2d 972, 993 (N.D. Cal. 2013) (quoting *Sampson v.* |
| 21 | *Murray,* 415 U.S. 61, 90 (1974)). Whether intangible harms are irreparable depends on whether |
| 22 | the facts "disclose that [such] loss… can be remedied by money damages." *Drakes Bay Oyster*, |
| 23 | 921 F.Supp.2d at 993. The Ninth Circuit has upheld, for example, a finding of "irreparable harm |
| 24 | in the form of 'very serious or extreme damage to [plaintiff's] mental health'" including a risk of |
| 25 | "suicide or self-harm and 'debilitating symptoms.'" *Poretti v. Dzurenda*, 11 F.4th 1037, 1050 |
| 26 | (9th Cir. 2021) (citations omitted). But courts have limited such findings to "extraordinary |
| 27 | circumstances," and held that a "bare and conclusory claim that" a defendant "is harming [the |
| 28 | |

plaintiff's] psychological well-being does not demonstrate an immediate threatened injury." *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F.Supp.3d 1294, 1307 (D. Haw. 2022).

The parties do not dispute that the educational debt at issue has damaged David Taylor's financial standing and both Plaintiffs' mental health. *See* ECF No. 30 at 9. Plaintiffs fail to show, however, that "the continuation of this nightmare" during the pendency of this action will lead to irreversible consequences. *Id.* Monetary damages upon success at trial may include damages for any emotional harm caused by demonstrated unlawful activity by Defendants.

Nor do Plaintiffs show that any pending transactions, like a mortgage application, could be impacted by the presence of the subject loans on credit reports during the pendency of this action. In any case, monetary damages could also compensate for any harm that occurs from improper reporting of debt during the pendency in this action. *See Williams v. Capital One, N.A.*, 2025 WL 2388683 at *2 (E.D. Cal. Aug. 18, 2025) (holding that damage to a plaintiff's credit score is not irreparable because, "Defendant(s) would be ordered to remove the debt from Plaintiff's credit report" if the plaintiff prevails at trial).

Plaintiffs have failed to demonstrate that permitting collection actions to continue will result in irreparable harm as a matter of law. When combined with the low probability of success on relevant claims, this warrants denying the motion for a preliminary injunction without discussing the other *Winter* factors.

### IV. Sanctions are Not Merited

MOHELA notes that under Federal Rule of Civil Procedure 11, courts may only award sanctions based on a "pleading, written motion, or other paper" submitted to the court "whether by signing, filing, submitting, or later advocating it" in bad faith. ECF No. 22 at 6. Plaintiffs respond that courts have the inherent authority to sanction the "full range of litigation abuses." ECF No. 30 at 10 (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991)). Even under this standard, however, none of the conduct Plaintiffs cite demonstrates sufficient bad faith as to merit sanctions.

Plaintiffs argue in their reply brief, for example, that Defendants acted in bad faith by rejecting or challenging service of the Complaint, only to file oppositions to Plaintiffs' motion

1    that include facts Defendants only could have known through the documents they allege to have
2    not received.[4] ECF No. 30 at 6. MOHELA never asserted that service was improper, but rather
3    asked for more time to determine whether it was. ECF No. 12 at 2. Navient did assert that
4    service was improper, but only insofar as the recipient was not a registered agent for service of
5    such process. ECF No. 30 at 131. That each Defendant was able to oppose Plaintiffs' motion is
6    insufficient to demonstrate that either one lied about technical service issues.

7    Plaintiffs then assert that by continuing to assess interest against them and increase the
8    amount owed, Defendants are spoiling any evidence as to the amount of Plaintiffs' loans. ECF
9    No. 30 at 7. This assumes that Defendants lack any internal records of the principal and interest
10   owed at any prior point in time, whereas such records are an established recordkeeping practice.
11   The Taylors may not allege that Defendants are spoiling evidence just because they cannot see the
12   full accounting of their debts over time without propounding discovery.

13   The moving papers, meanwhile, focus solely on Defendants' purported refusal to engage
14   in settlement negotiations on Plaintiffs' terms, which included a ban on unrecorded verbal
15   communication. ECF No. 8 at 1. Defendants' apparent refusal to accede to Plaintiffs' terms was
16   simply their choice, not bad faith. Further, Plaintiffs insisted on a single round of negotiations
17   with a minimum settlement amount in the tens of millions. ECF No. 8 at 6. They did not
18   substantially discuss how this demand reflects the damage suffered by Plaintiffs themselves, and
19   they enforced a 48-hour time limit that prevented MOHELA from obtaining information that
20   might inform its response. *Id.* By adopting an approach that left little room for negotiation,
21   Plaintiffs have not demonstrated bad faith conduct on Defendants' part so much as on their own.

22   Plaintiffs have failed to demonstrate any sanctionable conduct on Defendants' part, and
23   any request for such sanctions should be denied.

## CONCLUSION

25   For the foregoing reasons, **IT IS HEREBY RECOMMENDED:**

---

[4] Plaintiffs further assert that to further this fraud, Defendants manufactured "Return to Sender" events concealing their receipt of the served documents. ECF No. 30 at 6. The purported scans of these labels are too illegible for the Court to consider. *Id.* at 128-29.

**1.** Plaintiffs' motion for a preliminary injunction (ECF No. 6) be DENIED; and

**2.** Plaintiffs' accompanying request for sanctions be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 22, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE