UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TAYLOR and PATRICK TAYLOR,<br>Plaintiffs,<br>v.<br>NAVIENT CORP., a Delaware Corporation, et al.,<br>Defendants. | No. 2:25-cv-2687-TLN-SCR<br><br>ORDER and<br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs are proceeding pro se in this matter, which is accordingly referred to the undersigned for findings and recommendations pursuant to Local Rule 302(c)(21). Before the Court are separate motions to dismiss by Defendants Navient Solutions, LLC, and Navient Corp. (collectively "Navient") (ECF No. 37) and Higher Education Loan Authority of the State of Missouri ("MOHELA") (ECF No. 33, 39). When opposing the motion, Plaintiffs moved to strike the appearances of all Defendants' counsel and enter default judgment. ECF No. 41.

For the reasons explained below, the undersigned recommends dismissal of every claim without leave to amend, with the exception of claims for fraud in the inducement and unjust enrichment, for which leave to amend should be granted. The undersigned also denies Plaintiff's motion.

////

## I. BACKGROUND

A. Factual Allegations and Evidence

The Complaint alleges that 20 years ago, Plaintiff David Taylor was "fraudulently induced" into securing loans to attend ITT Technical Institute ("ITT"). ECF No. 1 at 2. This included both loans from the U.S. Department of Education ("DOE") and private loans that have since been assigned to Defendants Higher Education Loan Authority of the State of Missouri ("MOHELA"), Navient Solutions, LLC, and Navient Corp. (collectively "Navient"). *Id.* Plaintiff Patrick Taylor, David's father, co-signed one of these loans. *Id.*

In the summer of 2019, following the collapse of the for-profit Corinthian Colleges, Inc., a class action was brought to compel the adjudication of borrower defense claims submitted to the DOE. *See Sweet v. Cardona*, 641 F. Supp. 3d 814, 820 (N.D. Cal. 2022). The certified class included any former student of a listed for-profit college, including ITT, who received a federal student loan and had asserted a borrower defense that the DOE had not adjudicated on the merits. *Id.* In 2022, the parties reached a settlement agreement which provided full, automatic relief to most applicants and hard deadlines for deciding on the rest, with certain presumptions in favor of those applicants during the adjudication. *Id.* at 821-22.

Plaintiffs' reply brief in support of a prior motion for a preliminary injunction (*see infra* III) includes an October 20, 2022 email from the DOE. ECF No. 30 at 23. This email stated that David Taylor's federal student loans were fully discharged without further action, but also that this did not automatically discharge private loans like the ones Defendants service. *Id.* He nevertheless submitted this email to MOHELA as part of an application seeking discharge of his private loans. The Complaint does not specify when he submitted the application, but MOHELA emailed a copy of it back to him on January 31, 2025. ECF No. 30 at 55.

That reply brief also includes evidence that on April 11, 2025, MOHELA informed David Taylor that Navient had denied his discharge application. ECF No. 30 at 53-54. MOHELA's letter explained that Navient had considered a variety of factors when deciding that he did not meet the requirements to have his private loans discharged based on ITT's misconduct. *Id.* David Taylor appealed the denial on May 8, 2025, requesting in part that MOHELA articulate

what specific requirements were considered and why Defendants had concluded he did not meet them based on the evidence submitted. *Id.* at 51-52. MOHELA's June 12, 2025 response reaffirmed that the settlement in *Sweet* did not entitle him to discharge of private loans, while asserting that Navient's Legal Department had made all decisions concerning his discharge application. *Id.* at 49. Plaintiff filed a complaint against Navient Corp. with the Consumer Financial Protection Bureau ("CFPB") later that day. *Id.* at 46. On June 13, 2025, Navient responded that it had transferred all servicing of the loans to MOHELA, to whom David Taylor should therefore direct all complaints. *Id.* at 45.

On July 19, 2025, MOHELA sent David Taylor a letter identifying five reasons for Navient's denial of the discharge application. *Id.* at 39-42. This included insufficient evidence of alleged misconduct, of alleged harm, and of causation connecting said misconduct to said harm; the length of time since the misconduct occurred; and the length of time since Plaintiffs became aware of such misconduct. *Id.*

The Complaint alleges that enforcement of these loans for twenty years has resulted in a significant loss of income, bankruptcy in 2018, and housing instability for David Taylor and his daughter. ECF No. 1 at 3. It has also damaged Patrick Taylor's financial security and credit. *Id.* The Complaint further argues that Defendants dealt with Plaintiffs in bad faith by continuing collection actions while David Taylor appealed the discharge application denial. *Id.* Plaintiffs also allege that each Defendant blames the other for such denial as if they are separate entities, even though all three use a single address and two lack the required debt collection license from the California Department of Financial Protection and Innovation ("DFPI"). *Id.* at 3-4.

Based on these allegations, the Complaint first alleges "Conspiracy to Defraud & Fraud in the Inducement" for knowingly and willfully servicing loans predicated upon ITT's fraud, and retaining the $24,841.52 Plaintiffs have paid thus far. *Id.* at 4. It then alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, both for attempting to collect on a debt that Defendants should have known was fraudulent and for "harassing" Plaintiffs with 400 emails in the process. *Id.* The Complaint further alleges that these collection efforts also constitute Intentional Infliction of Emotional Distress ("IIED") and a breach of the federal

court order approving the settlement agreement in *Sweet*. *Id.* at 5-6. The Complaint argues that the breach of the settlement agreement doubles as "arbitrary and capricious" conduct under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Id.* at 6.

Separately, the Complaint alleges violations of the Consumer Financial Protection Act ("CFPA") based on Defendants blaming each other for the denial of the discharge application; the California Debt Collection Licensing Act ("CDCLA") based on the lack of DFPI licensing; and 26 U.S.C. § 7206 based on a Form 1099-E Navient filed with the Internal Revenue Service ("IRS") that uses Navient Solutions' name but Navient Corp.'s Taxpayer Identification Number ("TIN"). *Id.* at 5.

Based on these causes of action, the Complaint seeks disgorgement of $199,999,998 in "unjustly enriched funds," punitive and exemplary damages of $1,799,999,982, unspecified consequential damages for the harm inflicted on Plaintiffs, declaratory relief rescinding all subject loans as unenforceable, and injunctive relief both discharging these loans and compelling their deletion from Plaintiffs' credit reports. *Id.* at 6.

B. Procedural History

Plaintiffs filed the Complaint on September 18, 2025 and purportedly served all Defendants with the Complaint and Summons on September 19, 2025. ECF Nos. 1, 5. On September 30, 2025, Plaintiffs received a voicemail from Viviana Hedrick, counsel for MOHELA, requesting a return call to discuss the case. ECF No. 8 at 1, 4. Plaintiffs ignored the voice message, purportedly because they refuse to engage in any unrecorded communication in this matter. *Id.* at 1. On October 1, Navient sent Plaintiffs a Notice of Rejected Service of Process for failure to serve its registered agent for process. ECF No. 30 at 131.

Hedrick called three more times before David Taylor responded via email on October 2, 2025. ECF No. 8 at 2, 5-6. This email offered to settle the case for $500 million, and alternatively gave Defendants only one opportunity to counteroffer in writing within 48 hours for no less than $48 million. *Id.* at 6. Plaintiffs received an automatic email from Hedrick saying she was out of town and had limited access to her email account until October 6. *Id.* at 7. She nevertheless replied on October 3 asking for a phone call to discuss the matter, which Plaintiffs

considered "open and willful defiance" of their demand that any settlement discussions be in writing. *Id.* at 2, 7.

On October 7, 2025, MOHELA filed an *ex parte* application requesting an extension of the deadline to respond to the Complaint. ECF No. 12 at 2. The application asserted that MOHELA needed this time in part to "determine if service was proper and/or effective." *Id.* It also explained that Plaintiffs' refusal to discuss the matter via "unrecorded telephone conversation" left MOHELA unable to secure a stipulation for such an extension. *Id.* The Court granted the extension on October 14, 2025, over Plaintiffs' opposition. ECF Nos. 13-14.

On November 10, 2025, MOHELA and Navient separately moved to dismiss this action but noticed these motions before the district judge assigned to this case, Judge Nunley. ECF Nos. 31, 33. MOHELA re-noticed its prior motion before the undersigned, while Navient filed a new motion supplanting the original motion. ECF Nos. 37, 39.

On November 25, 2025, Plaintiffs filed both a consolidated opposition (ECF No. 40) and a motion to strike all appearances by counsel for each Defendant, including the motions to dismiss that they filed, and enter default judgment against them (ECF No. 41). On December 5, 2025, both sets of Defendants filed reply briefs in support of their motions to dismiss and MOHELA opposed Plaintiff's motion to strike Defendants' counsel's appearances. ECF No. 43-45. Navient joined this opposition on December 8, the same day that Plaintiffs replied to it. ECF No. 46, 48.

On December 31, 2025, Plaintiff filed objections to the then-pending findings and recommendations to deny Plaintiff's motion for a preliminary injunction ("F&R Objections").[1] ECF No. 51. The Court heard the motions on January 22, 2026, during which Plaintiff indicated that his F&R Objections also served to augment his opposition to the motions to dismiss.

////

////

////

---

[1] Judge Nunley later adopted the findings and recommendations in full, denying Plaintiffs' motion for a preliminary injunction. ECF No. 57.

## II. LEGAL STANDARDS

A. Dismissal for Improper Service

Rule 12(b)(5) authorizes dismissal due to insufficient service of process. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process ... a court ordinarily may not exercise power over a party the complaint names as defendant.") (citations omitted). "Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Strong v. Countrywide Home Loans, Inc.*, 700 Fed. App'x 664, 667 (9th Cir. 2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

A plaintiff may serve a corporate defendant by delivering a copy of the summons and complaint to an agent authorized by the defendant to receive service of process and mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1)(B). Alternatively, as with individual defendants, a corporate defendant may be served in accordance with laws for service in the general jurisdiction courts of the states in which the district court is located. Fed. R. Civ. P. 4(e)(1), (h)(1)(A). California, in turn, permits service by mailing the summons and complaint, along with two copies of a notice and acknowledgment requiring the authorized agent to sign and return it in a provided return envelope. Cal. Code Civ. P. § 415.30(a)-(b).

On a Rule 12(b)(5) motion, the plaintiff bears the burden of establishing the validity of service. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (reversing the district court's denial of motion to set aside judgment for inadequate service of process). That burden is met by a process server's return affidavit, which is "prima facie evidence that service was effected." *Marotz v. City of San Francisco*, No. C-13-01677 DMR, 2014 WL 1571623, at *5 (N.D. Cal. Apr. 18, 2014). Unless some defect in service is shown on the face of the return, the process server's affidavit is entitled to "a presumption of correctness" and may be overcome only by "strong and convincing evidence." *SEC v. Internet Sols. for Bus., Inc.*, 509 F3d 1161, 1166 (9th Cir. 2007); *see Emine Tech. Co. v. Aten Int'l Co.*, No. C 08-3122 PJH, 2008 WL 5000526, at *2 (N.D. Cal. Nov. 21, 2008) ("A motion to dismiss under Rule 12(b)(5) requires defendant to

////

produce affidavits, discovery materials, or other admissible evidence establishing the lack of proper service.").

B. Dismissal for Failure to State a Claim

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (internal quotation marks omitted). Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The factual allegations must be sufficient to "raise a right to relief above the speculative level" and "raise a reasonable expectation that discovery will reveal evidence" needed to support the claim. *Id*. at 556.

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773-74 (internal citation and quotation marks omitted) (cleaned up).

A pro se plaintiff's factual allegations are interpreted liberally on a 12(b)(6) motion, and the court must apply a less stringent pleading standard than if the plaintiff was represented by counsel. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). A pro se litigant is entitled to notice of

the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

## III. JUDICIAL NOTICE

A court may judicially notice facts when they are "not subject to reasonable dispute because," *inter alia*, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court may take such judicial notice either on its own or upon request to do so by a party that supplies the court with sufficient information. Fed. R. Evid. 201(c)(1)-(2). When judicially noticing that a document and its contents exist, the court generally does not take the statements within such a document as true. *See Brookfield Property Group, LLC v. Liberty Mutual Fire Insurance Co.*, 679 F.Supp.3d 971, 977 (C.D. Cal. 2023) (citing *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018)). Separately, however, courts may judicially notice facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc).

MOHELA requests judicial notice of its registration as a student loan servicer with the Department of Financial Protection & Innovation ("DFPI"). ECF Nos. 33-1, 34. Plaintiffs seek judicial notice of the evidence attached to their reply brief in support of the now-denied motion for a preliminary injunction. ECF No. 40 at 2 (citing ECF No. 30). The requests are granted, with the understanding that judicial notice does not require the Court to treat the factual allegations in these documents as true.

## IV. ANALYSIS

### A. Motion to Dismiss

#### 1. Objections to Service Have Been Waived

Navient argues that Plaintiffs failed to comply with the service requirements under either federal or state law. ECF No. 37 at 22. Plaintiffs accuse Navient of having tampered with the return receipt for the mailed summons, forged a "Return to Sender" stamp, and issued multiple perjurious "Rejection of Service" letters as part of a broader "criminal conspiracy to obstruct justice." ECF No. 40 at 5-6.

The Court need not directly address Plaintiffs' allegations. "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179, and 1532 v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir. 1984). Accordingly, a "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir.1986) (citing *Jackson,* 682 F.2d at 1347); Fed. R. Civ. P. 12(h)(1). A general appearance "ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear." *Id.* (citing 28 Fed. Proc. (L. Ed.) § 65.137 at 526 (1984)); *see also Wilson v. Moore and Associates, Inc.,* 564 F.2d 366, 368–69 (9th Cir.1977) (informal contact between parties constitutes appearance when defendant shows "clear purpose to defend the suit").

Navient filed its own opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 23) before appearing at the hearing for it (ECF No. 38). Navient argued at the hearing on these motions to dismiss that the court should construe this as a special appearance that did not waive any objections to personal jurisdiction or inadequate service of process. Courts have only found this to be the case where the defendant actively preserves their right to raise these arguments at a later point. In *Cohen v. Bokor*, for example, the court found that these defenses were not waived because the defendant had:

> at all times asserted that it was making a special appearance in this action to bring the instant motion to dismiss pursuant to Rule 12(b)(5) and to oppose plaintiff's motion for a preliminary injunction. It further asserted that it did not intend to waive its objections to plaintiff's improper service by filing its opposition to plaintiff's motion by the deadline imposed by the Court.

2024 WL 3330560 at *4 (C.D. Cal. 2024); *see also Dr. JKL Ltd. v. HPC IT Education Center*, 749 F.Supp.2d 1038, 1047 (interpreting an answer as a general appearance waiving personal jurisdiction objections, even though the answer did not comply with Rule 8, because it did not "raise service or personal jurisdiction" objections). In contrast, at no point in Navient's opposition to the motion for a preliminary injunction did it raise service issues, assert the Court

did not have personal jurisdiction, or otherwise imply that Navient was making a special appearance. *See generally* ECF No. 23.

Navient made a general appearance in this case before later arguing that this Court lacks personal jurisdiction over it. Such arguments are waived, and the motion to dismiss on those grounds should be denied.

2. <u>The Complaint is Not Impermissibly Vague</u>

Pleading standards under Fed. R. Civ. P. 8, *Twombly*, and *Iqbal* typically prohibit shotgun pleadings, defined as "pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). MOHELA argues that the Complaint's allegations constitute such pleadings, in large part by conflating Defendants and not articulating how each one contributed to the alleged conspiracy against Plaintiff. ECF No. 33 at 14.

Underlying the prohibition on shotgun pleadings is the broader rule that "plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong." *Sollberger*, 2010 WL 2674456, at *4. The Court agrees with MOHELA that the operative Complaint fails to meet this standard. After noting that the DOE had concluded that ITT engaged in fraud that voided all related financial instruments, the Complaint alleges in broad terms a "20-year campaign to unlawfully enforce these void instruments[.]" ECF No. 1 at 2-3. At best, it references "multiple, baseless denials of Plaintiffs' School Misconduct Discharge application" without saying when these denials occurred and from which Defendant. *Id.* at 3. At minimum, the Complaint requires leave to amend unless doing so would be futile.

Any argument that the conflation of Defendants is unwarranted, however, fails. As scant as it is, the Complaint explains that part of the confusion comes from "documented, circular finger-pointing," all while these Defendants operated from a single address. ECF No. 1 at 3. Evidence previously submitted in this action gives some credence to this claim. The July 19, 2025 denial of Plaintiff's discharge application was on MOHELA letterhead, yet claimed that Navient had reviewed the application and found the loan ineligible for discharge. ECF No. 30 at

40, 42. But on June 13, 2025, a month earlier, Navient told David Taylor that his loan had been transferred to MOHELA and that he needed to direct any concerns towards MOHELA instead. *Id.* at 45. This confusion even permeates the pending motions, as MOHELA argues in reply that it does not own the loans at issue and therefore cannot discharge them. ECF No. 43 at 4.

The collusion between MOHELA and Navient makes any expectation that Plaintiffs can distinguish between them in their pleadings unreasonable. The failure to do so does not render their Complaint an improper shotgun pleading.

3. <u>Leave to Amend Would Resolve Any Disputes on Timeliness</u>

Defendants, primarily Navient, argue that various claims are barred by their applicable limitations periods. The Court addresses each in turn.

The first claim, for fraud in the inducement, shares the same three-year limitations period as all actions "for relief on the ground of fraud or mistake." ECF No. 37 at 11; Cal. Code. Civ. P. § 338(d). Navient argues that this claim accrued when the student loan originated in 2005, 20 years before this action was filed. ECF No. 37 at 11. The Ninth Circuit has recently affirmed in a similar case, however, that "[w]here fraud masks the injury, accrual does not begin until the plaintiff knew, or reasonably should have known, of the fraud-induced nature of the injury." *Turrey v. Vervent, Inc.*, 2026 WL 2330561 at *5 (9th Cir. Aug. 12, 2026). Defendants provide no reason to believe Plaintiffs should have known that they had been defrauded until the settlement in *Sweet* was approved in November 2022. As the Complaint was filed in September 2025, an action based thereon was timely.

Admittedly, understanding that this settlement affects the accrual of certain claims required consulting materials beyond the boundaries of the Complaint. The Complaint itself only states that an investigation by the DOE uncovered ITT's fraud, without asserting when this occurred. ECF No. 1 at 2. This alone demonstrates that the pleadings themselves do not provide sufficient details about the fundamental facts underlying the claims. Even Plaintiffs implicitly concede this, insofar as they rely on other filings in this action to respond to these motions to dismiss. *See* ECF No. 40 at 2 (arguing that the evidence filed with their reply brief on their motion for preliminary injunction is what "annihilates every argument Defendants now raise.")

The question is not whether the motions to dismiss the current Complaint should be granted. The question is whether leave to amend would be futile, and as to which claims.

The second claim under the FDCPA has a one-year limitations period. ECF No. 37 at 12; 15 U.S.C. § 1692k(d). Navient argues that the "documented campaign of over 400 separate communications" alleged in the Complaint did not occur within this one-year period. WCF No. 37 at 12 (citing ECF No. 1 at 4). It cites *Joseph v. J.J. Mac Intyre Cos., LLC*, arguing that it requires treating each communication as an individual violation such that claims outside this period are time-barred. ECF No. 37 at 12 (citing 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)).

*Joseph* did not categorically hold that each communication constitutes a separate claim that must be timely. It held that courts must ask "whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." 281 F. Supp. 2d at 1161. If the conduct formed a continuing pattern, then the question becomes whether suit was filed "within one year of the most recent date on which the defendant is alleged to have violated the FDCPA." *Id.* (quoting *Padilla v. Payco General American Credits, Inc.,* 161 F.Supp.2d 264, 273 (S.D.N.Y. 2001)). In *Joseph*, for example, a pattern of "over 200 calls to Plaintiff's residence during a nineteen-month period" was enough to find all 200 calls actionable under the continuing violation doctrine. 281 F. Supp. 2d at 1161-62.

The question here becomes whether at least one of the communications for each Defendant falls within the one-year limitations period, starting on September 18, 2024, such that amending the Complaint to include them would cure this defect. The judicially noticed exhibits include emails from MOHELA dated October 2024 or later. ECF No. 30 at 113-14. Leave to amend the complaint to include these communications would render a claim against MOHELA timely, which also suggests that Plaintiffs should have the opportunity to identify any such communications from Navient during that timeframe.

Third, Plaintiffs' claim under the CFPA has a limitations period of three years. ECF No. 37 at 12 (citing 12 U.S.C. § 5564(g)(1)). This claim, however, targets a "circular finger-pointing" scheme between Defendants to avoid responsibility for forgiving the student loan. ECF No. 1 at 5. The judicially noticed documents show that at least some of the communications underlying

this claim occurred in the middle of 2025, well within the limitations period. *See* ECF No. 30 at 42, 45. Leave to amend would cure this defect.

Finally, Plaintiff's sixth claim for IIED has a limitations period of two years. ECF No. 37 at 13; Cal. Code Civ. P. § 335.1. Navient argues that the Complaint's allegation of a "20-year campaign of harassment, bad-faith denials, and unlawful collection of a fraudulently known debt" (ECF No. 1 at 5) plainly shows that this conduct occurred outside of the limitations period. ECF No. 37 at 13. Even Navient admits, however, that the operative question is whether the last of these acts was within the limitations period. *Id.* (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 809 (Cal. Ct. App. 2005)). To the extent that the communications hinging on the existence of the student loan are part of the "unlawful collection" alleged, as discussed above, Plaintiff has demonstrated that some of them occurred just months before this action was filed. *See* ECF No. 30 at 42, 45. Leave to amend would cure this defect.

Navient has failed to demonstrate that any of Plaintiffs' claims cannot be pleaded as timely upon amending the Complaint to incorporate allegations and evidence previously filed in this action. The Court need not discuss Plaintiffs' tolling argument (ECF No. 40 at 4).

4. Claims III-V: Lack of a Private Cause of Action

Navient argues that three of the claims in the Complaint are based on laws that do not provide a private cause of action. ECF No. 37 at 18-19. The CFPA only authorizes enforcement actions by the CFPB and state attorneys general; the CDCLA by the DFPI; and 26 U.S.C. § 7206 by the United States government through criminal prosecution. *Id.*; Cal. Fin. Code §§ 100021–100025; *Pye v. First Tech. Fed. Credit Union*, No. 2:23-cv-09571-DSF (AJRx), 2024 U.S. Dist. LEXIS 4738, at *6 (C.D. Cal. Jan. 8, 2024); *Stanford-Franz v. P.S.C., Inc.*, No. 2:23-cv-7829-DSF-MARx, 2024 U.S. Dist. LEXIS 23966, at *4-5 (C.D. Cal. Feb. 8, 2024); *Gidding v. Zurich American Insurance Co.*, No. 15-cv-01176-HSG, 2015 U.S. Dist. LEXIS 151947, at *12-14 (N.D. Cal. Nov. 9, 2015).

Plaintiffs do not respond to these arguments in their opposition to the motions themselves. The F&R Objections argue, however, that these violations should instead be treated as the predicate acts required for a claim under the Racketeer Influenced and Corrupt Organizations

("RICO") Act. ECF No. 51 at 7. To adequately plead such a claim, "a plaintiff must allege that the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Black v. Corvel Enterprise Comp Inc.*, 756 Fed. Appx. 706, 708 (9th Cir. 2018) (citing *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002)). Racketeering activity, however, is limited to actions indictable under specific statutes identified in 18 U.S.C. § 1961(1). The CFPA, the CDCLA, and 26 U.S.C. § 7206 are not identified in this list of racketeering predicates.

The third, fourth, and fifth claims should therefore be dismissed without leave to amend.

5. Claim VII: Brought Against Improper Defendants

The seventh claim is based simultaneously on the purported breach of the settlement in *Sweet* and a purported violation of the APA. ECF No. 1 at 6. Defendants successfully argue, however, that they cannot be held liable under either. Because they were not signatories to the settlement agreement, Plaintiffs cannot directly[2] enforce it against their private lenders or servicers. ECF No. 37 at 21; ECF No. 33 at 16-19. Meanwhile, the APA only permits the government to "hold unlawful and set aside agency action," where an agency is defined as an "authority of the Government of the United States[.]" 5 U.S.C. § 706(2)(A). By definition, conduct of a private entity like loan servicers is beyond the scope of the APA. ECF No. 37 at 21-22.

As Plaintiffs do not respond to these arguments, they are conceded. The seventh claim should be dismissed as inapplicable to the Defendants in this action.

6. Claim II: The Disputed Loans Are Not Subject to the FDCPA

To state a claim under the FDCPA, the second claim in the Complaint:

> a plaintiff must show: (1) that he is a consumer within the meaning of 15 U.S.C. §§ 1692a(3) and 1692c(d); (2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector within the meaning of 15 U.S.C. §

[2] The Court emphasizes that this does not preclude Plaintiffs from arguing that the *Sweet* settlement agreement bolsters their other claims – as potential evidence that any loans obtained to attend an institution like ITT were based on fraud and therefore unenforceable.

> 1692a(6); and (4) that the defendant violated one of the provisions of the FDCPA, 15 U.S.C. §§ 1692a-1692o.

*Ananiev v. Aurora Loan Servs., LLC*, 2012 U.S. Dist. LEXIS 95441 at *9 (N.D. Cal. July 10, 2012) (citing *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997)). Defendants assert that Plaintiff has failed to adequately plead the last two elements.

As to the third element, Defendants argue that neither Navient nor MOHELA are debt collectors under the FDCPA. ECF Nos. 33 at 18, 37 at 15. "[N]umerous courts[,]" including in cases where Navient was a defendant, "have found that student loan servicers that begin servicing prior to default are not debt collectors under the FDCPA." *Haysbert v. Navient*, 2016 U.S. Dist. LEXIS 30720, at *33 (C.D. Cal. Mar. 8, 2016) (citing *Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004); *Levy-Tatum v. Navient & Sallie Mae Bank*, No. CV 15-3794, 2016 U.S. Dist. LEXIS 1548, 2016 WL 75231, at *7 (E.D. Pa. Jan. 7, 2016); *Edmond v. Am. Educ. Servs.*, No. CIV.A. 10-0578 JDB, 2010 U.S. Dist. LEXIS 114834, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010); *Mondonedo v. Sallie Mae, Inc.*, No. 07-4059-JAR, 2009 U.S. Dist. LEXIS 25497, 2009 WL 801784, at *3 (D. Kan. Mar. 25, 2009)). At no point in the Complaint do Plaintiffs assert that David Taylor defaulted on the student loans he now believes are void.[3]

Plaintiffs argue that Navient and its agents have already conceded that the FDCPA applies to them in another action. ECF No. 40 at 5. In the stipulated final judgment resolving *Consumer Financial Protection Bureau v. Navient Corporation*, Case No. 3:17-cv-00101-RDM (M.D. Penn. Sep. 12, 2024) ("*CFPB v. Navient*"),[4] Navient agreed to not violate the FDCPA and to comply with certain requirements in the servicing and collecting of private education loans as defined by 15 U.S.C. § 1650. ECF No. 40 at 20, 40. This judgment does not suggest that the FDCPA applies to loans that were not in default when Navient begins servicing them. In any case, the parties stipulated to this judgment "without adjudication of any issue of fact or law" and Navient and its co-defendant only "admit[ted] the facts necessary to establish the Court's jurisdiction over

---

[3] In their F&R Objections, Plaintiffs asserted that they "were forced to continue paying on a debt they knew was fraudulent, simply to protect their family's credit." ECF No. 51 at 6. This further demonstrates that Plaintiffs are not in default.

[4] The Court *sua sponte* notices this stipulation. Fed. R. Evid. 201(c)(1).

them and the subject matter of this action." *Id.* at 10-11. When a stipulated judgment articulates only the relief awarded "without any indication of the facts on which the judgment is based, then there is not a sufficient record on which to base collateral estoppel." *In re Barr*, 172 B.R. 299, 307 (9th Cir. 1994). Because *CFPB v. Navient* does not articulate under what circumstances Navient is a "debt collector" and must comply with the FDCPA, Navient is not precluded from arguing that it is not one under the allegations in the Complaint here.

Plaintiff then argues that whether Defendants are servicers or debt collectors is irrelevant because the Complaint alleges they made a "false or misleading representation" per 15 U.S.C. § 1692e. ECF No. 40 at 5. Yet this statute clearly states that "[a] *debt collector* may not use any false, deceptive, or misleading representation or means" when attempting debt collection. 15 U.S.C. § 1692e (emphasis added). In other words, the statute clearly requires that the defendant be a debt collector under the FDCPA to be held liable.

That neither Navient nor MOHELA are debt collectors pursuant to the allegations in the record is sufficient to dismiss the FDCPA claim without leave to amend. The court need not discuss whether the alleged misconduct would constitute a violation of the FDCPA.

7. <u>Claim I: Allegations of Fraud are Inadequately Pled, but Amendment Would Not be Futile as to Certain Fraud-Related Theories</u>

Complaints alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires articulating "the who, what, when, where, and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The Complaint's first claim, titled "Conspiracy to Defraud and Fraud in the Inducement" asserts that the Defendants' collusion to collect $24,841.52 in payments on voidable student loans constitutes fraud and unjust enrichment. The F&R Objections clarify that in alleging a "Conspiracy to Defraud[,]" Plaintiffs attempted to raise a RICO claim based on mail fraud and wire fraud, among other predicate acts. *See supra*; ECF No. 51 at 9-10.

////

////

a. Fraud in the Inducement

California equates fraudulent inducement with "promissory fraud[,]" where a promise to do something the defendant does not actually intend to do creates "an implied misrepresentation of fact that may be actionable fraud." *Engalla v. Permanente Med. Group, Inc.,* 15 Cal. 4th 951, 973 (Cal. 1997). Articulating such a claim requires allegations of some misrepresentation, knowledge of the falsity of the misrepresentation, an intent to defraud plaintiff via reliance on the misrepresentation, plaintiff's justifiable reliance on it, and damages. *Id.* at 974.

Defendants argue that Plaintiffs fail to adequately plead such fraud by simply alleging that Defendants conspired to unjustly enrich themselves by servicing the loans predicated on ITT's fraudulent conduct. ECF No. 33 at 15; ECF No. 37 at 14 (citing ECF No. 1 at 4). MOHELA adds that the Complaint's assertion that the loans are voidable hinges entirely on the DOE finding that federal loans to attend ITT were voidable based on fraud, despite this finding not applying to private loans. ECF No. 1 at 2; ECF No. 33 at 15; *see also* ECF No. 30 at 23 (October 2022 DOE email advising David Taylor that his federal loans were discharged but that this "does not apply to any private student loans you may have.")

David Taylor argued at the hearing that under the "Holder Rule," he can invalidate his loan agreements with Defendants just like he could with ITT based on its fraudulent conduct. The Holder Rule requires that any consumer credit contract include a provision rendering the holder of the contract "SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF." 16 C.F.R. § 433.2(a). Defendants responded that the Holder Rule is not a separate cause of action, and that a debtor can only invoke it as a defense in a collection action.

Other courts have since rejected this argument, including in other actions that involve Navient. In *Ramos v. Navient et al.*, for example, the plaintiff invoked the Holder Rule when seeking a declaration finding unenforceable the three student loans to which Navient had become the successor-in-interest. 2026 WL 1537265 at *1-*2, *4 (C.D. Cal. May 29, 2026). The court acknowledged that the Holder Rule does not give rise to an affirmative private right of action, but

found that plaintiff could still rely on it in claims for declaratory relief. *Id.* at *5. Whether the debt was enforceable in light of the educational institution's fraudulent conduct was a "sufficiently immediate controversy[,]" and defendants had conceded that the plaintiff could have invoked the Holder Rule as a defense if they had brought a collection action. *Id.* The court refused to find "that Plaintiff must stop making payments and subject himself to a lawsuit to obtain an adjudication of his obligation to pay, particularly where Defendants allegedly continue to attempt to collect the debt." *Id.*

Plaintiffs seek "declaratory judgment that the loan contracts are, and always have been, rescinded and unenforceable[.]" ECF No. 1 at 6. The first claim articulates the legal theory of such relief – that because ITT defrauded Plaintiff by providing a sham education, Defendants cannot collect on the loans taken to attend. Fraud or undue influence of a party to a contract is among the reasons that another party may rescind the contract under California Law. Cal. Civ. Code § 1689(b)(1).

Navient is correct that the Complaint's current allegations fail to explain this rationale. Because it is a cognizable theory of relief, however, the appropriate remedy is to dismiss with leave to amend the claim for fraudulent inducement to explain why Defendants are required to void the loan agreements under the Holder Rule.

b. <u>RICO for Mail and Wire Fraud</u>

As discussed above, a RICO claim requires allegations of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity …. that (5) … caused injury to plaintiff's business or property." *Black*, 756 Fed. Appx. at 708 (citing *Chaset*, 300 F.3d at 1086). Racketeering activity, however, is limited to actions indictable under specific statutes identified in 18 U.S.C. § 1961(1). Additionally, such racketeering activity only constitutes a pattern if at least two such acts occur within ten years of each other. *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (quoting 18 U.S.C. § 1961(5)).

Another subsection of the RICO Act, 18 U.S.C. § 1962(d), prohibits any conspiracy to violate 18 U.S.C. § 1962(c). There can be no RICO conspiracy claim where there is no adequately pled substantive RICO offense. Moreover, to sustain a claim under § 1962(d), a

plaintiff must plead facts which show "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *Samuelson v. Jewell School District 8*, 725 F.Supp.3d 1195, 1208 (D. Or. 2024) (quoting *United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015)). The "key question" in a RICO conspiracy case is whether the defendant "knew about and agreed to facilitate" a scheme that would involve the commission of two predicate acts. *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quotation marks omitted).

Aside from trying to integrate the standalone claims under the CFPA, the CDCLA, and 26 U.S.C. § 7206 into such a claim (*see supra*), Plaintiffs cite three recognized forms of racketeering activity. ECF No. 51 at 10. The first of these, bank fraud, prohibits any scheme to either defraud a financial institution or obtain any money, securities, or property owned by such a financial institution via false pretenses or representations. 18 U.S.C. § 1344. Plaintiffs argue that the purpose of refusing to discharge the loans was "to defraud their own institution by knowingly inflating the value of their assets with void, unenforceable debts." ECF No. 51 at 10. They fail to explain how defrauding a financial institution, however, resulted in injury to Plaintiffs. Even if the facts support a RICO claim based on bank fraud, Plaintiffs do not have standing to bring it.

Plaintiffs otherwise assert RICO claims based on bank and wire fraud. ECF No. 51 at 10. Both require "(1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud." 18 U.S.C. § 1341, 1343; *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). The scheme that constitutes the first element may be "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Id.* (quoting *Carpenter v. United States*, 484 U.S. 19, 27 (1987)).

Plaintiffs' allegation of mail fraud is based on both Navient's alleged mail tampering to avoid service of process and MOHELA's purported attempt to intimidate David Taylor with a "fabricated FBI web address." ECF No. 51 at 10, 13 (citing ECF No. 30 at 34). MOHELA has no connection to Navient's attempt to argue that service of this action was improper as to Navient alone. Any mail tampering that Navient might have engaged in (*see supra* IV.A.1) therefore

cannot be part of any "enterprise" between the entities.

As to MOHELA, a hyperlink to a nonexistent FBI webpage in a single document cannot constitute a "pattern" of mail fraud.[5] The argument that this was used to intimidate David Taylor is also without merit. MOHELA only cited this page to assert that David Taylor's arguments were frivolous as being too closely related to the phrases "'Redemption,' 'Strawman,' or 'Acceptance for Value.'" ECF No. 30 at 34. MOHELA was not intimidating Plaintiffs with any action of its own, but rather saying that Plaintiff's arguments had no legal merit, with the caveat that David could "clarify the nature of [his] inquiry" if he believed otherwise. *Id.*

The allegations of wire fraud, meanwhile, stem from the submission of an allegedly fraudulent Form 1099-E and the unlawful transmission of allegedly false information about Plaintiffs' financial situation to national credit agencies. ECF No. 51 at 10. The former is an attempt to repackage the basis for Plaintiffs' claim under 26 U.S.C. § 7206 – which they lack the ability to enforce – under a cognizable theory of private recovery. As to the transmission of information to credit agencies, transmitting information about the private student loans was not fraudulent until and unless the loan was discharged. Although Plaintiffs might be able to invoke the Holder Rule to obtain declaratory judgment voiding the loans, the loans remain valid until then. At minimum, Plaintiffs cannot meet the heightened pleading standards when alleging that Defendants' communications with these agencies constitute wire fraud.

Plaintiffs have failed to demonstrate that they can plead a RICO claim based on any predicate act as defined by statute.

c. Unjust Enrichment

The opposition brief asks why Defendants were silent on the gravamen of the Complaint – that the alleged fraud unjustly enriched Defendants by allowing them to charge Plaintiff for loans

---

[5] Although the URL did not lead to a viable webpage when the Court used it, several other articles on the FBI's webpage do seem to emphasize the same point – that terms like "strawman" and "redemption" are associated with fraud schemes. *See, e.g.,* FBI's Counterterrorism Analysis Section, *Sovereign Citizens: A Growing Domestic Threat to Law Enforcement*, Law Enforcement Bulletin, FBI (Sep. 1, 2011), https://leb.fbi.gov/articles/featured-articles/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement (detailing a "Redemption Theory" used by sovereign citizens to justify defrauding banks).

that they knew should have been discharged. ECF No. 1 at 4; ECF No. 40 at 1, 7. Navient argues that they do not have to address this because unjust enrichment does not constitute a standalone claim. ECF No. 45 at 5.

There is a split in authority on whether an unjust enrichment claim may proceed under California law "regardless of the precise label assigned to the cause of action." *United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F.Supp.3d 1052, 1091 (N.D. Cal. 2014) (quoting *In re TFT–LCD (Flat Panel) Antitrust Litig.,* Case No. 10–5625 SI, 2011 WL 4345435, at *4 (N.D.Cal. Sept. 15, 2011)). The Ninth Circuit has allowed such a claim "as an independent cause of action or as a quasi-contract claim for restitution." *ESG Capital Partners v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). A judge in this District has since held that because plaintiffs cannot "pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter[,]" they cannot recover on an unjust enrichment claim if an enforceable contract exists. *Copart Inc. v. Sparta Consulting, Inc.,* 339 F.Supp.3d 959, 983-84 (E.D. Cal. 2018) (quoting *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1388 (Cal. Ct. App. 2012)). Conversely, plaintiffs can bring a claim for restitution based on unjust enrichment if "the contract is unenforceable, procured by fraud, or otherwise inapplicable." *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.,* 698 F. Supp. 3d 1210, 1219 (E.D. Cal. 2023).

This is precisely the argument Plaintiffs have made in the Complaint. The underlying dispute is whether the loan agreements entered to finance David Taylor's education at ITT, including those that Defendants service, are unenforceable due to ITT's fraudulent representations in encouraging David to attend ITT by taking out loans. Dismissal of a quasi-contract claim like unjust enrichment is improper at the pleading stage if the validity of the contract remains in dispute, as here. *See Echo & Rig*, 698 F. Supp. 3d at 1219.

Leave to amend should include leave to plead a claim for unjust enrichment.

d. <u>Conclusion</u>

The undersigned recommends that leave to amend be granted only as to claims for fraud in the inducement and unjust enrichment, insofar as Plaintiffs seek discharge of their loans due to

such fraud under the Holder Rule. All other fraud claims should be dismissed without leave to amend.

8. Claim VII: Conduct was Not Sufficiently Unreasonable to Constitute IIED

An IIED claim requires allegations of (1) extreme or outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress through such conduct; (3) severe emotional distress; and (4) actual and proximate causation of the emotional distress by the outrageous conduct. *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1272 (E.D. Cal. 2012). Conduct is not actionable unless it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hayward v. Bank of Am., N.A.*, No. 2:16-cv-03047-MCE-DMC, 2020 U.S. Dist. LEXIS 60318, at *27 (E.D. Cal. Apr. 6, 2020) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982)).

Plaintiffs base their IIED claim on Defendants' "20-year campaign of harassment, bad-faith denials, and unlawful collection on a known fraudulent debt[.]" ECF No. 1 at 5. Defendants respond that courts have refused to recognize routine servicing activities as exceeding reasonable bounds of decency, even if they do inherently cause some stress. *See* ECF No. 37 at 20 (citing *Hayward v. Bank of Am., N.A.*, No. 2:16-cv-03047-MCE-DMC, 2020 U.S. Dist. LEXIS 60318, at *28 (E.D. Cal. Apr. 6, 2020); *Singh v. Litton Loan Servicing LP*, No. CV F 10-1355 LJO GSA, 2011 U.S. Dist. LEXIS 49145, at *29 (E.D. Cal. Apr. 28, 2011)).

As a threshold matter, Plaintiffs have made no allegations to suggest that Defendants knew the debt was fraudulent until the *Sweet* settlement in 2022. Although ITT's fraud could potentially be imputed on Defendants for purposes of invoking the Holder Rule, it cannot be inferred that they intended harm by trying to collect on a debt that everyone thought was valid at the time. Even as to communications postdating the *Sweet* settlement, no authority suggests that a dispute over whether a loan should be discharged renders collection efforts unreasonable. Plaintiffs do not suggest any such authority in their opposition, or otherwise respond to Defendants' arguments at to this claim.

The undersigned recommends dismissing the IIED claim without leave to amend.

////

B. Plaintiffs' Motion to Strike Defendants' Appearances is Denied

Plaintiffs ask that the Court exercise its inherent power to control its own docket to strike the appearances by counsel as improper for two reasons. They first argue that the pending motions to dismiss reflect "bad faith fraud upon this Court" and violate Federal Rule of Civil Procedure 11(b)'s prohibition against frivolous or baseless legal contentions. ECF No. 41 at 1. Plaintiffs affirm in reply, however, that Rule 11 does not itself provide that striking appearances and ruling in Plaintiffs' favor is the appropriate remedy. ECF No. 48 at 2. They instead cite *Chambers v. NASCO, Inc.*, which held that courts must have "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.*; 501 U.S. 32, 44-45 (1991).

Regardless of the procedural vehicle, sanctioning a party requires that the motion lack any basis in law, such that Defendants knew at the time of filing that such arguments could not prevail. Defendants raise valid arguments for dismissing many of the claims without leave to amend, and even claims that may have some merit require amendment to be adequately pled. There is no basis to strike Defendants' appearances.

Plaintiffs alternatively argue that under Rule of Professional Conduct 3.7, Defendants' counsel are necessary witnesses to their own bad-faith conduct in this action and are therefore precluded from representing them in the case. ECF No. 41 at 2. But because there is no basis for a possible sanction against Defendants' counsel, there is no possible Rule 3.7 issue.

The motion to strike Defendants' appearances through counsel is denied. So too is the motion for entry of default, given that Defendants are defending the case.

## V. PRO SE PLAINTIFF SUMMARY

A motion to dismiss, like the ones Defendants filed, asks whether the Complaint in its current form includes enough facts and allegations to explain the claims you wish to bring. Most of your response hinges on evidence you filed after filing your Complaint, particularly when moving for a preliminary injunction. In doing so, you effectively admitted that the Court needed this evidence in order to fully understand your claims and to find them timely. This alone justified granting the motions to dismiss. The undersigned then needed to decide whether you could, based on the evidence you submitted, amend your complaint to resolve the issues therein.

For most of your claims, the answer is no. Your second claim under the FDCPA requires that Defendants be debt collectors, which they are not because your loan were never in default. You cannot bring a private cause of action under the laws cited in your third, fourth, and fifth claims, whether standalone or under RICO. Your sixth claim, for intentional infliction of emotional distress, fails because the alleged collection activities do not constitute sufficiently outrageous conduct. Finally, your seventh claim asserts violations of the *Sweet v. Cardona* settlement and the Administrative Procedure Act, but neither applies to these Defendants. They are private entities, not government administrative agencies, and they themselves were not signatories to the settlement agreement.

The only claim that could have merit is your first claim for fraud, and only in part. None of your theories for predicate acts under RICO have merit, and the undersigned is recommending that you not have leave to amend a RICO claim. As for fraud in the inducement, however, you argued at the hearing that the Holder Rule might allow you to invalidate the student loans based on ITT's fraud. Relatedly, you argue in your opposition brief that the Complaint seeks to bring a claim that Defendants were unjustly enriched by collecting on these invalid loans. The undersigned finds enough possible merit with these arguments, and only these two, to allow them go forward after you amend your Complaint to include enough details about such fraud.

The undersigned is issuing these recommendations for the district judge to adopt, subject to any objections you may raise in the timeline discussed below. If the district judge adopts these recommendations, or issues any order that grants leave to amend as to at least some claims, you will have 30 days from the issuance of such an order to file a First Amended Complaint ("FAC") that addresses the issues discussed herein as to surviving claims. Your FAC must be complete without reference to any other filing in this action. That is, it must include enough information on who did what, when, and where so the Court can understand why you believe you are entitled to relief. Your FAC may not include any claims that are dismissed without leave to amend.

Meanwhile, because Defendants should prevail on several arguments in their motions, your motion to strike their appearances is denied. There is also no basis for entry of default against the Defendants, who are defending the case.

## VI. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to strike Defendants' counsel's appearances in this action, and therefore to enter default as to Defendants (ECF No. 41) is DENIED.

Furthermore, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motions to Dismiss (ECF No. 33, 37, 39) are:
   a. GRANTED WITH LEAVE TO AMEND as to Plaintiffs' claims to fraud in the inducement and unjust enrichment, only to the extent that he therefore seeks declaratory relief discharging the loans held by Defendants; and
   b. GRANTED WITHOUT LEAVE TO AMEND as to all other claims.
2. Plaintiff be given 30 days from the date of any entry adopting these Findings to file a First Amended Complaint ("FAC") that complies with such an order.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**SO ORDERED**.

DATED: October 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE